UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TARA O'GRADY-SULLIVAN, | Case No.: 2:11-cv-00839-RLH-LRL |
| Plaintiff, | **O R D E R** |
| vs. | (Motion to Dismiss–#18; Motion for Leave to File Sur-Reply–#27) |
| THE STATE OF NEVADA, *et al.*, | |
| Defendants. | |

   Before the Court is Defendants Chris Bennett, Nevada Department of Public Safety, Nevada Highway Patrol, Chris Perry, and the State of Nevada's **Motion to Dismiss** (#18, filed July 1, 2011) and Plaintiff Tara O'Grady-Sullivan's **Motion for Leave to File Combined Sur-Reply or to Strike Defendants' Replies** (#27, filed Aug. 17). The Court has also considered the oppositions and replies for these motions.

## BACKGROUND

   This case arises out of Plaintiff's allegations that she was physically assaulted by two law enforcement officers and treated inhumanely while in their custody. Plaintiff asserts the following allegations in support of her claims. On December 17, 2008, Defendant John Hegge, a Deputy Sheriff of the Nye County Sheriff's Office, came to Plaintiff's residence in Beatty, Nevada

during an investigation. While Hegge was at Plaintiff's residence he was allegedly bitten by Plaintiff's dog. The following day, the dog was taken for a ten-day quarantine by William Gray of the Nye County Animal Control. Plaintiff subsequently received various anonymous emails threatening that her dog would be killed. Hegge's name was mentioned in these emails. On December 31, Plaintiff was informed that her dog died while in quarantine.

Later that same day Plaintiff went to the Beatty Club, which is apparently a bar that was owned by Alpheus Bruton, her former boyfriend. Bruton informed Plaintiff that he intended to drive to Las Vegas that night even though he had been drinking. Plaintiff and Bruton left the Club together and Bruton got into his vehicle and started driving away. Plaintiff noticed a trooper with the Nevada Highway Patrol in a vehicle across the highway so she tried to get the trooper's attention by waving and pointing toward Bruton. Plaintiff continued walking down the road until the trooper, Defendant Chris Bennett, got out of his vehicle and approached Plaintiff. Plaintiff attempted to explain to Bennett that Bruton was driving drunk when, without explanation, Bennett grabbed her, punched her, forcefully threw her to the ground, and handcuffed her.

Bennett then placed Plaintiff in his vehicle. However, because Bennett did not lock the doors Plaintiff exited the vehicle. Plaintiff demanded to know why she was being attacked and whether she was being arrested. Bennett grabbed Plaintiff again, threw her to the ground, and began beating her. With Plaintiff's face to the ground, Bennett repeatedly kicked her and smashed her face to the ground, knocking out her front teeth and injuring her face. Hegge then arrived at the scene and also began punching and kicking Plaintiff. The Defendants refused to give Plaintiff medical care despite the fact that an ambulance was at the scene and eventually Plaintiff was transported to Nye County Jail in Beatty where she was booked for several criminal charges.

Plaintiff also alleges she was treated inhumanely during her detention at the jail. She was held in a room with no sink or toilet and forced to sleep on a urine-soaked mattress. She was forced to undergo a blood-alcohol test during which Bennett repeatedly shoved the device into her mouth, injuring both her mouth and throat. She was forced to take a cold shower, which

1   caused her significant pain given her injuries.  And she was refused access to a lawyer and denied
2   medical care, other than some Tylenol.

3   Eventually, Plaintiff was transported to a hospital, albeit in handcuffs, leg restraints,
4   jail clothes, and with no shoes.  On the way to the hospital Hegge contacted the driver of the
5   ambulance and ordered him to pull over.  Hegge informed Plaintiff that he had "spoken to the
6   judge" and the judge had ordered Hegge to release Plaintiff.  Hegge did so but refused to remove
7   Plaintiffs' handcuffs and leg restraints.  Plaintiff eventually arrived at the Desert View Regional
8   Medical Center in Pahrump, Nevada, where she remained in handcuffs and leg restraints for
9   several hours until someone from the Pahrump division of the Nye County Sheriff's Office
10  released her.  Concerned for her 14 year-old daughter, who had been alone since the evening
11  Plaintiff was first taken into custody, Plaintiff checked out of the hospital and began walking back
12  towards Beatty.  After walking 10 of the 70 miles from Pahrump to Beatty, Plaintiff was picked up
13  by someone and taken home.

14  On December 30, 2010, Plaintiff filed a complaint in Nye County District Court,
15  asserting claims for violation of civil rights under 42 U.S.C. § 1983, assault and battery, negligent
16  and intentional infliction of emotional distress, civil conspiracy, respondeat superior, negligence,
17  unlawful arrest, false imprisonment, and negligent hiring, training, and supervision.  Defendants
18  Bennett, Nevada Department of Public Safety, Nevada Highway Patrol, Chris Perry, and the State
19  of Nevada have now filed a motion to dismiss some of these claims.  Defendants Nye County,
20  Anthony DeMeo, and Hegge have joined this motion.  Plaintiff also filed a motion for leave to file
21  a sur-reply to Defendants' motion.  For the reasons discussed below, the Court grants Defendants'
22  motion in part and denies it in part, and grants Plaintiff's motion.
23  ///
24  ///
25  ///
26  ///

# DISCUSSION

## I. Plaintiff's Motion for Leave to File a Sur-Reply

Plaintiff asks the Court to consider a sur-reply to Defendants' motion to dismiss because Defendants raise arguments in their reply that were not raised in their original motion. The Court agrees and will therefore consider Plaintiffs' sur-reply, as well as the rest of the briefing on this motion, in resolving Defendants' motion to dismiss.

## II. Defendants' Motion to Dismiss

### A. Legal Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to rise above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (internal citation omitted).

In *Iqbal*, the Supreme Court recently clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id*. at 1950. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id*. at 1949. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id*. at 1950. A claim is facially plausible when the plaintiff's complaint alleges facts that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 1949. Where

the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id*. (internal quotation marks omitted).  When the claims in a complaint have not crossed the line from conceivable to plausible, plaintiff's complaint must be dismissed.  *Twombly*, 550 U.S. at 570.

    **B.**    **Analysis**

        **1.**    **Section 1983 Claims Against State and its Officials**

The Eleventh Amendment bars a federal court award of damages under § 1983 against a state, state agency, or state official sued in an official capacity. *Quern v. Jordan*, 440 U.S. 332, 342 (1979); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).  Furthermore, neither a state nor a state official sued in an official capacity for monetary damages is a "person" for purposes of a § 1983 damages action.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Therefore, even if a state waives its Eleventh Amendment immunity in federal court, *Will* precludes a damages action against the state government entity or a state official sued in an official capacity for monetary damages. *Id*.  However, a state official sued in an official capacity is a "person" under § 1983 when sued for prospective relief. *Id*. at 71 n. 10.  Therefore, Plaintiff's § 1983 claims against the Nevada Department of Public Safety and the Nevada Highway Patrol are dismissed because these are state agencies and state agencies are not "persons" under § 1983.  Furthermore, Plaintiff's § 1983 claims against the officers of these state agencies[1] in their official capacities are also dismissed because they were not sued for prospective relief.

Additionally, a § 1983 claim against a municipal official in his or her official capacity, for monetary damages, is treated as a claim against the municipal entity itself.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Plaintiff sued the Nye County Sheriff's office as well as two officials from the Nye County Sheriff's office—Anthony Demeo (Sheriff of Nye County) and

---

[1] Jearld L. Hafen (Director of the Nevada Department of Public Safety), Chris Perry (Chief of the Nevada Highway Patrol), Chris Bennett (officer with the Nevada Highway Patrol), various Doe Defendants who were employees of these entities.

1  John Hegge (Deputy Sheriff of the Nye County Sheriff's Office).  Therefore, Plaintiff's § 1983
2  claims against Hegge and Demeo in their official capacity are dismissed because these claims are
3  redundant and treated as claims against the Nye County Sheriff's Office itself.

### 2. First Amendment

5  To state a claim for First Amendment Retaliation, a plaintiff must adequately allege
6  that the defendant took action that would chill or silence a person of ordinary firmness from future
7  First Amendment activities, and that their desire to cause the chilling effect was a but-for cause of
8  their actions.  *Skoog v. County of Clackamas*, 469 F.3d 1221, 1231–32 (9th Cir. 2006).  Plaintiff
9  alleges that during her arrest Bennett repeatedly battered her because she made a gesture towards
10 Bruton, her former boyfriend who was driving drunk, and because she waived at Bennett trying to
11 get his attention.  She also alleges that after Bennett approached her she tried to tell him that
12 Bruton was driving drunk when Bennett began punching her.  Plaintiff's allegations fail to state a
13 valid First Amendment Retaliation claim because it is not plausible that Bennett would batter
14 Plaintiff merely because she told him that Bruton was driving drunk.  These allegations alone are
15 therefore insufficient under *Iqbal* and *Twombly*.

16 Plaintiff explains in her sur-reply that there are additional facts that make the claim
17 valid, specifically, that when Bennett approached her she accused him of killing her dog.  These
18 additional allegations may make Plaintiff's claim plausible, however, because they were not
19 included in Plaintiff's complaint the Court may not consider them.  Accordingly, the Court grants
20 Defendants' motion with respect to Plaintiff's First Amendment Retaliation, but it does so without
21 prejudice.

### 3. Fifth Amendment

23 The Fifth Amendment to the U.S. Constitution provides that no person shall be
24 deprived of life, liberty, or property without due process of law.  Plaintiff alleges that Defendants
25 violated the Fifth Amendment by beating, restraining, and detaining Plaintiff without cause.
26 Defendants argue that the Fifth Amendment Due Process clause applies only in criminal cases, and

1  because Plaintiff's Fifth Amendment claim only alleges misconduct prior to the initiation of any
2  criminal proceedings the Court should dismiss the claim. However, in Defendants reply they
3  concede that this standard only applies to alleged violations of a plaintiff's right not to be
4  compelled to be a witness against herself, which is correct. Accordingly, Defendants have
5  abandoned their argument and the motion is denied.[2]

### 4. Eighth Amendment

7  The Eighth Amendment applies only to post-trial detainees. *Ingraham v. Wright*,
8  430 U.S. 651, 671–72 n. 40 (1977). Because Plaintiff is not a post-trial detainee her Eighth
9  Amendment claim fails as a matter of law and the Court dismisses it with prejudice.

### 5. Assault

11  An assault occurs when a defendant causes a plaintiff to feel apprehension of
12  harmful or offensive conduct. Prosser and Keeton on Torts, § 10 at 43 (5th ed. 1984). Plaintiff
13  alleges that Barnett and Hegge repeatedly punched and kicked Plaintiff, and smashed her face to
14  the ground, while she was in their custody. During her detention Barnett allegedly shoved a
15  breathalyser device into Plaintiff's mouth. In other words, Plaintiff alleges she was repeatedly
16  battered while in Barnett and Hegge's custody. Under these facts, Plaintiff would have reasonably
17  felt apprehension of harmful or offensive conduct from Barnett and Hegge whenever she laid eyes
18  on them. Therefore, the Court denies Defendants' motion with respect to Plaintiffs' assault claim.

### 6. Punitive Damages

20  NRS 41.035(1) precludes exemplary or punitive damages awards "against a present
21  or former officer or employee of the State or any political subdivision . . . ." Therefore, Plaintiff's
22  state causes of action may not include any amount as exemplary or punitive damages.

---

[2] The Court refuses to address Defendants' *Heck* Doctrine arguments. If Plaintiff attempts to amend her complaint to include a coerced confession claim she may do so pursuant to the rules. At that point the Court will consider the *Heck* Doctrine, when it has been fully briefed (hopefully in a more concise and readable fashion, the Court does not like reading long block quotes when counsel can summarize the law with their own, more concise language).

AO 72
(Rev. 8/82)

# CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (#18) is GRANTED in part and DENIED in part.

- Granted as to the following claims: (1) punitive damages for the state causes of action, (2) Eighth Amendment, (3) § 1983 claims against Hafen, Perry, Bennett, Demeo, Hegge, and the Doe Defendants *in their official capacities*, (4) § 1983 claims against the Nevada Department of Public Safety and the Nevada Highway Patrol, and (5) First Amendment Retaliation;
- Denied as to all other claims.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File Sur-Reply (#27) is GRANTED.

Dated: December 15, 2011

_____
**ROGER L. HUNT**
**United States District Judge**